UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X
RBC Nice Bearings, Inc. et al.,

                                  Plaintiffs,        MEMORANDUM AND ORDER
                                                               Case No. 06-cv-1380 (TLM)

       -against-

Peer Bearing Company,

                                  Defendant,
------------------------------------------------------------ X

**TUCKER L. MELANÇON, Senior United States District Judge:**

Before the Court are defendant Peer Bearing Company's Motion for Attorney's Fees and Costs [Rec. Doc. 217] and plaintiffs RBC Nice Bearings, Inc. and Roller Bearing Company of America, Inc.'s ("plaintiffs") memorandum in opposition thereto [Rec. Doc. 225]. For the reasons set forth herein, defendant's Motion [Rec. Doc. 217] will be DENIED.

**I.      Procedural Background**

Plaintiffs' action, which has been dismissed, consisted of various trademark, copyright and state law claims relating to five different trademarks. On April 3, 2009, the parties filed a Stipulation dismissing all claims relating to the "600 Series" and "6900 Series" marks [Rec. Doc. 139]. On October 29, 2009, United States District Judge Vanessa Bryant rendered summary judgment for defendant on all claims regarding the "1600 Series" mark [Rec. Doc. 200]. On December 29, 2009, plaintiffs filed a Motion to dismiss their remaining claims [Rec. Doc. 211], which related to the "7500 Series" and "7600 Series" marks (plaintiffs did so in order to be able to appeal Judge Bryant's ruling), and on December 30, 2009 the undersigned entered an Order dismissing all remaining claims and closing the case [Rec. Doc. 215]. Defendant now seeks attorney's fees and costs from plaintiffs.

**II.    Discussion**

    A.    Legal Standard for Awarding Attorneys' Fees and Costs

Defendant's request is based on the Lantham Act's provision for the award of attorneys' fees in "exceptional cases," 15 U.S.C.A. § 1117(a), and the Copyright Act's provision allowing a court to award attorneys' fees and costs "in its discretion," 17 U.S.C. § 505.  The Second Circuit has interpreted "exceptional circumstances" to mean "instances of fraud or bad faith, or willful infringement," *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir.2003), where "bad faith" includes not only bad faith infringement, but also "cases where a plaintiff prosecutes an action in bad faith," *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 36 (2d Cir. 1993).  "The decision to award attorneys' fees [in Lanham Act claims] falls well within the district court's discretion, and absent evidence of its abuse, will not be disturbed on review." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir.1996).  Defendant asserts that plaintiffs' claims were "frivolous," "objectively unreasonable," and "without any reasonable basis," and makes several arguments to support that assertion.

    B.    Plaintiffs' Subjective Belief in their Ownership of the Trademarks

First, defendant argues that plaintiffs knew from the outset that they did not own the trademarks.  To support that argument, defendant points to two August 7, 2009 letters sent by plaintiffs to SKF USA, Inc. ("SKF"), the entity from which plaintiffs allegedly purchased the trademarks on which this action was based, demanding the assignment of the trademarks.  These letters, however, were sent three years after this action was initiated, and indicate nothing about what plaintiffs believed at the time they brought the action.  The letters, further, stated plaintiffs' belief that they had already purchased the trademarks from SKF as part of an agreement executed in 1997, but had simply never had them formally assigned.  Regardless of the correctness of plaintiffs' understanding, it is clear that the letters sent to SKF on August 7, 2009 do not indicate that plaintiffs

2

knew they did not own the asserted trademarks when they initiated this action.

Defendant also points to various declarations, discovery requests, and arbitration demands that ostensibly show that plaintiffs knew they never purchased the relevant trademarks from SKF. Taken together, however, this evidence shows nothing more than that plaintiffs faced an uphill battle to assemble enough evidence to prove that they owned them. In Judge Bryant's ruling awarding partial summary judgment to defendant [Rec. Doc. 200], she notes that the issue of whether SKF sold the marks to plaintiffs was "a particular threshold issue that the parties have not directly addressed in their briefs." As the ruling was issued on October 29, 2009, this statement strongly belies the notion that plaintiffs knew throughout the course of the litigation that they did not own the asserted marks.

### C. Plaintiffs' Subjective Belief in the Strength of their Trademark Claims

Second, defendant argues that plaintiffs knew from the outset that they would be unable to show that the trademarks at issue were protectable. Specifically, defendant points to plaintiffs' lack of evidence that any of their trademarks had acquired secondary meaning. The question of whether a showing of secondary meaning was even required, however, was a legitimate disagreement on the law, as plaintiffs planned on offering evidence to show that their marks were sufficiently distinctive so as not to require a showing that they had acquired secondary meaning.[1] Defendant has not established that plaintiffs knew their argument would fail.

### D. Plaintiffs' Motive

---

[1] Under Second Circuit law, "trademarks are divided into five general categories of distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful." *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). "Marks that are arbitrary, fanciful, or suggestive are considered 'inherently distinctive,' and are automatically entitled to protection under the Lanham Act," whereas "[m]arks that are descriptive are entitled to protection only if they have acquired a 'secondary meaning' in the marketplace." *Id.* at 143 (internal citations omitted).

Third, defendant makes several allegations that purportedly demonstrate that plaintiffs' true motive in bringing this action was "to harass [defendant] and stifle competition in the ball bearing industry." The first is that information came to light during a deposition on April 9, 2008 that indicated to plaintiffs that their claims relating to the "600 Series" and "6900 Series" marks were destined to fail. Even if true, that assertion has no bearing on what plaintiffs believed at the time they brought the action in 2006.[2] The second is that plaintiffs did not initiate this action until seven years after they found out that plaintiff was selling a "1600 Series" of ball bearings. However, tardiness in initiating a trademark action, even where sufficient to bar the action by laches, does not necessitate a finding of bad faith or an award of attorneys' fees. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir.1996) (affirming district court's dismissal of trademark action as barred by laches, but finding that defendant failed to demonstrate bad faith on part of plaintiff). Defendant's third allegation is that "Plaintiffs sought millions of dollars in damages in an attempt to economically squeeze [defendant] into ceasing the use of these numbers," which seems to the Court like entirely appropriate behavior for plaintiffs pressing trademark litigation.

E.   Plaintiffs' Copyright Claim

Finally, defendant argues that plaintiffs' copyright claim was objectively unreasonable. In plaintiffs' Third Amended Complaint [Rec. Doc. 48], which was filed less than a year after this action was initiated, their copyright claim was limited to an allegation that defendant had copied the "overall appearance and content" of plaintiffs' 1966 "Catalog No. 240," and an allegation that

---

[2]Furthermore, it appears that plaintiffs dropped those claims shortly after realizing that they were doomed. Plaintiffs' counsel Joseph Martini states in a sworn affidavit that soon after that deposition, and "no later than May 29, 2008," he told defense counsel Thomas McDonough that "[plaintiffs were] no longer going to pursue claims based on the 600 SERIES and 6900 SERIES trademarks." Pl. Mem. in Opp., Exh. 11. Plaintiffs also submit an email that McDonough sent Martini on February 13, 2009 stating that "[s]ome time ago...[plaintiffs] agreed not to take any further discovery on these bearings." Pl. Mem. in Opp., Exh. 1.

"[plaintiffs'] bearing drawings...were used in an infringing manner to produce Defendant's corresponding lines of bearings." Judge Bryant ruled for defendant on both of these claims [See Rec. Doc. 200], finding that defendant copied no more than "unprotectable facts" from Catalog No. 240, and that any bearing drawings that defendant copied were "clearly intended to be accurate depictions of the bearings themselves, and therefore do not warrant copyright protection." She devoted more than 11 pages of her opinion to arriving at these legal conclusions, at one point noting that "[t]he extent to which numbers such as the load ratings at issue here are copyrightable has not been fully clarified by the Second Circuit." The Court finds that while defendant won on the law, plaintiff's claims were not objectively unreasonable.

### III. Conclusion

Based on the foregoing, it is

**ORDERED** that defendant's Motion for Attorney's Fees and Costs [Rec. Doc. 217] is **DENIED**.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　Tucker L. Melançon
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

May 14, 2010
Bridgeport, CT